IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUANE VAN LIEW, | No. CIV S-06-1533-WBS-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Docs. 15 & 16) and defendant's cross-motion for summary judgment (Doc. 18).

/ / /

/ / /

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue is substituted for his predecessor. The Clerk of the Court is directed to update the docket to reflect the above caption.

1

# I. BACKGROUND

Plaintiff applied for disability insurance ("DI") benefits on January 5, 2004, based on disability.  In his applications, plaintiff claims that his impairment began on May 15, 2003. Plaintiff claims his disability consists of a combination of problems with "herniated discs; upper & lower extremities; and neck."  Plaintiff states that these conditions limit his ability to lift, stand, sit, carry, reach, and grasp.  Plaintiff is a United States citizen born June 18, 1950, with a high school education.

## A. Summary of the Evidence

On April 15, 2002, plaintiff reported to his treating physician – Jerry J. Gross, D.O. – complaining of "some left shoulder pain for a couple of weeks."  Dr. Gross observed diminished range of motion in all planes, but no obvious erythema or effusion.  Dr. Gross referred plaintiff to an orthopedist for further evaluation of the shoulder pain.  A May 6, 2002, a file note prepared by Dr. Gross reflects that plaintiff was going to see the orthopedist that week for "follow-up on his left shoulder situation."  After this date, Dr. Gross did not note any shoulder problems.

Plaintiff sustained a work-related injury in February 2003.  In March 2003, plaintiff was diagnosed by another treating physician – Fred Richardson, M.D. – with "acute lumbar strain."  Dr. Richardson cleared plaintiff to return to work with limitations on lifting, pulling, and pushing up to no more than 20 pounds.  Dr. Richardson also suggested that plaintiff should be allowed to sit down as needed or 50% of the time.  Plaintiff was also limited to only work above the waist (i.e., no bending, crouching, or stooping).  In April 2003, plaintiff reported increased pain upon returning to work.  Dr. Richardson diagnosed lumbar strain and, again, cleared plaintiff for work with the same restrictions.  In May 2003, plaintiff reported to Dr. Richardson that he was feeling better with the use of medication.  In June 2003, plaintiff reported that he had done some heavy lifting which exacerbated his back pain.  Dr. Richardson again cleared plaintiff to work, but this time with a limitation of lifting, pulling, and pushing up to no

more than 15 pounds. As part of his treatment, Dr. Richardson prescribed pain medication and referred plaintiff for pain management.

On July 15, 2003, plaintiff was examined by Lee T. Snook, M.D., for an evaluation prior to receiving a series of lumbar epidural steroid injections for back pain management. Plaintiff was referred to Dr. Snook by Dr. Richardson. Dr. Snook diagnosed "chronic low back pain" and recommended a series of epidural injections. He also recommended that plaintiff continue to be limited to light duty and that he wear a back brace while at work. At the time of the examination, Dr. Snook observed that plaintiff was in no acute distress. As to musculoskeletal findings, Dr. Snook reported:

> [Plaintiff] does have excellent range of motion of the lumbosacral spine. He also has excellent range of motion of the hips and knees. He has discomfort in the supine position and standing. Gait is for the most part normal. He has good range of motion of the neck and there is no tenderness along the cervical spine or in the paracervical or thoracic tissues. Palpation of the lumbar vertebrae does not yield tenderness, however, there is a lot of marked tenderness in the paralumbar tissues bilaterally. There is area of muscle spasms palpated in these areas.

Dr. Snook also noted a May 20, 2003, MRI which showed "no obvious disc herniation, spinal canal stenosis, malalignment, or compression fracture."

On July 22, 2003, Rosalind Hsia, M.D., conducted an EMG study for possible lower extremity radiculopathy. According to Dr. Hsia's report, at the time of this evaluation, plaintiff denied any "sensory complaints in the lower extremities." Dr. Hsia also reported that plaintiff "has no loss of power in the legs" and that plaintiff "had epidural injections two days ago." Dr. Hsia offered the following impressions:

> Today's study is consistent with a very mild distal left tibial neuropathy that is demyelative. There is also evidence of a mild compressive neuropathy at the left peroneal nerve at the fibular head. The prolonged H reflexes on each side are consistent with S1 root dysfunction bilaterally. This may be a reflection of bilateral S1 root compression, however, there are no EMG changes to corroborate with the H reflex abnormalities. Consequently, it is not felt that there is a significant radiculopathy present. Clinical correlation is recommended.

1         In August 2003, Dr. Snook prepared a report in connection with plaintiff's worker's compensation claim.  Dr. Snook noted that plaintiff reported relief from pain as a result of the epidural injections and recommended that the injections continue.

         Dr. Richardson reported on August 29, 2003, that plaintiff's condition had improved, but "slower than expected," and added that, unless modified work was available, plaintiff should be off work completely for 13 days.  Dr. Richardson continued to prescribe pain medication.

         In October 2003, plaintiff was evaluated by Philip Orisek, M.D., a spine surgeon.  Dr. Orisek reported that plaintiff's "main limiting complaint" is "significant right leg pain."  Dr. Orisek diagnosed:  (1) lumbar spondylosis; (2) lower extremity radiculopathy; and (3) foraminal stenosis, L-5, right side.  He recommended a selective nerve block and, if pain returns, a microdecompression procedure.  Plaintiff received the nerve block in November 2003 and later underwent the microdecompression operation.

         Plaintiff was seen by Dr. Orisek on December 9, 2003, for a follow-up evaluation.  With respect to the epidural injections, plaintiff reported "about five days of excellent relief of his right leg pain" but that the pain had returned and was causing numbness in his shin and ankle.  Dr. Orisek recommended the decompression procedure.

         In January 2004, plaintiff was seen by Pacito V. Yabes, M.D., for low back pain radiating to both lower extremities.  On physical examination, Dr. Yabes observed:

> . . . The lumbar spine is in the midline region.  There is no redness, swelling or atrophy of the lumbar muscles.  There is no muscle fasciculations.  Palpation of the lumbar spine reveals that he has tenderness on palpation on both lumbar paraspinal muscles, more on the right.  There is no tenderness on palpation in the lumbar spinous processes, buttock area, or greater trochanter.  Lumbar range of motion – he has limited active range of motion with lumbar flexion, extension, and bilateral side bending secondary to pain.  Bilateral lumbar rotation was also limited secondary to pain.

Dr. Yabes noted "5/5" with respect to bilateral knee extension and flexion.  He recommended changing plaintiff's medication to a "longer acting narcotic pain medication."  Dr. Yabes opined

4

that plaintiff was temporarily and totally disabled until February 29, 2004.

On February 5, 2004, Corazon C. David, M.D., prepared a physical residual functional assessment based on a review of the medical records. Dr. David opined that plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently and sit, stand, and/or walk about 6 hours in an 8-hour day. Dr. David assessed no limitations as to pushing or pulling. For postural limitations, Dr. David noted that plaintiff could balance and kneel frequently, but could only occasionally climb, stoop, crouch, or crawl. Dr. David did not assess any manipulative, communicative, environmental, or visual limitations. She noted that there was no support in the record for any shoulder impairment.

Upon referral by his attorney, plaintiff was evaluated by Glynn Garland, M.D., on July 22, 2004. At the examination, plaintiff reported that he filed a claim for trauma to both shoulders on August 15, 2003. Plaintiff stated that the problem arose from repeated use of a sledgehammer on the job. He also stated that the shoulder problems began in 2001 and continue to periodically bother him. Plaintiff also reported that his back pain was present every day and was exacerbated by prolonged sitting and standing, as well as repeated bending or stooping. Plaintiff also reported pain in his knees. Specifically, he told Dr. Garland that he experienced a "dull aching discomfort which is present on an occasional basis. . . ."

On physical examination of the shoulders, Dr. Garland noted a scar from a prior shoulder surgery, but no other signs of deformity. Dr. Garland made the following observations concerning the shoulder:

> . . . Shoulder flexion was 150/170 degrees; extension was 30/30 degrees; internal rotation was 60/60 degrees; external rotation was 80/80 degrees; and abduction was 150/170 degrees.

As to the lumbar spine, Dr. Garland noted:

> . . . There was a 1-inch long scar on the midline from previous surgery. There was no evidence of scoliosis when the spine was viewed from the rear. Motion was tested and found to be reduces by 25% in all directions. [¶] Mr. Van Liew was able to walk with equal ease on the toes and heels of both feet and had a normal gait. [¶] Sensation was intact in both lower

1  limbs when tested for light touch. [¶] Deep tendon reflexes were 0/4 at the knees and ankles.

As to the knees, Dr. Garland noted:

> The knees were examined next with the applicant in the supine position on the examining table. Normal alignment was observed in the lower limbs. Knee motion was tested and found to be normal on both sides in both flexion and extension. The medial collateral, lateral collateral, and cruciate ligaments were intact. There was no evidence of an effusion within either joint. The applicant was able to squat in a satisfactory manner.

Regarding plaintiff's work restrictions, Dr. Garland opined:

> Mr. Van Liew has a disability in the open labor market because of his shoulders which preclude him from using the upper extremities for heavy lifting, pushing, pulling, and using the hands over shoulder height.
>
> Work restrictions for this applicant's lumbar spine preclude him from heavy lifting and repeated bending and stooping since he has lost at least 50% of his pre-injury capacity for lifting, bending, and stooping.
>
> Work restrictions for the applicant's knees are taken from the guidelines and are, in part, subsumed by the restrictions for his lumbar spine. In addition to those restrictions, he is precluded from prolonged standing, walking over uneven ground, squatting, kneeling, crouching, crawling, and performing other activities requiring comparable physical effort.

In September 2004, Dr. Yabes completed an assessment of plaintiff's ability to do work activities. The assessment form indicates that the doctor's conclusions are based on an examination. Dr. Yabes opined that lifting and carrying were affected by plaintiff's disc problem. Dr. Yabes also opined exertional impairments for pushing, pulling, and bending due to low back pain. He concluded that plaintiff could lift a maximum of 10 pounds and indicated that sedentary work was appropriate. He did not suggest any non-exertional limitations. In the September 2004 assessment, Dr. Yabes also opined that plaintiff could not climb, balance, stoop, crouch, kneel, crawl, or bend at all. As to how often plaintiff could reach and push/pull, Dr. Yabes simply stated "yes." For objective findings to support his conclusions, Dr. Yabes noted: (1) recent lumbar surgery; (2) lumbar MRI results; (3) degenerative disc problems; and (4) pain.

///

On December 22, 2004, Dr. Yabes prepared a progress report diagnosing lumbago and pain disorder and recommending that plaintiff be taken off work until February 2005. It does not appear that this assessment was based on any new objective findings.

In March 2005, plaintiff was examined by Steven McIntire, M.D., an agency consultative examining physician. According to Dr. McIntire, he reviewed "prior evaluations, clinic reports, imaging results, and an EMG nerve conduction study." He also conducted his own physical examination of plaintiff. Dr. McIntire diagnosed mild osteoarthritis of the lumbar spine. He offered the following functional assessment:

> Objectively, there are not clear findings of a radiculopathy on the exam. The claimant has slightly diminished right patellar reflex but no motor or sensory deficits in a radicular pattern. Straight leg raising and Lasegue's are negative bilaterally. There are not findings of a myelopathy. The claimant has mild loss of range of motion of the lumbar spine and mild tenderness on palpation. There are not significant gait abnormalities.
>
> Given the above findings, the claimant does have significant functional limitations. He would be limited in terms of lifting or carrying activities to not more than 15 pounds frequently or 30 pounds occasionally. He should lift by bending at the knees and should avoid more than occasional stooping activities. Standing or walking would be limited to six hours in an eight-hour day. The current exam does not suggest limitations in terms of time sitting. There are not manipulative limitations suggested by the present exam.

This assessment was submitted to the ALJ after the hearing, but was included in the record which formed the basis for the hearing decision.

**B.   Procedural History**

Plaintiff's claims were initially denied. Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on March 1, 2005, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

In his August 12, 2005, decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity after May 15, 2003;

///

2. The medical evidence establishes that the claimant has degenerative disc disease, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4;

3. The claimant's subjective complaints are consistent with the performance of light work;

4. The claimant has the residual functional capacity for lifting no more than 20 pounds occasionally, and 10 pounds frequently; the claimant can stand or walk for 6 hours in an 8 hour day;

5. The claimant cannot perform his past relevant work; the claimant is 55 years of age and has a 12th grade education;

6. Prior to June 16, 2005, Medical-Vocational Rule 202.14 directs a conclusion that the claimant was not disabled because a significant number of jobs existed that he could perform; on, and after June 18, 2005, Rule 202.06 directed a conclusion that the claimant is disabled because a significant number of jobs do not exist that he can perform; and

7. Therefore, the claimant was under a disability . . . but not prior to June 18, 2005 (20 C.F.R. § 404.1520(f)).

Based on these findings, the ALJ concluded that plaintiff was not disabled before June 19, 2005 and, therefore, not entitled to DI benefits for any period before that time. After the Appeals Council declined review on May 18, 2006, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the

1  Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See
2  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the
3  administrative findings, or if there is conflicting evidence supporting a particular finding, the
4  finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th
5  Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation,
6  one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas
7  v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal
8  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338
9  (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to give the proper weight to the opinions of his treating physicians; (2) the ALJ erred in relying on the report provided by the consultative examining physician because it does not meet the regulatory requirements; and (3) the ALJ erred in concluding that plaintiff's severe impairments did not include shoulder and knee problems.

**A.  Evaluation of Medical Opinions**

Plaintiff claims that the ALJ did not properly evaluate the medical opinions of his treating physicians.  Specifically, he argues that the ALJ failed to give specific and legitimate reasons for rejecting the assessment of Dr. Yabes.  Plaintiff contends that the opinions of Drs. Richardson and Garland support Dr. Yabes' opinion that he is limited to sedentary work, and not light work as the ALJ concluded.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

9

than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

///

///

As to Dr. Yabes, the ALJ stated:

> In September and December 2004, a physician completed a work status report suggesting that the claimant remain off work until February 2005. However, this physician did not offer any specific limitations or provide any objective findings indicating that the claimant is unable to perform ongoing work activity. Therefore, the Administrative Law Judge gives that "generic" opinion little weight.

The ALJ also noted other records from Dr. Yabes showed that plaintiff worked through August 2004. As to Dr. Garland, the ALJ stated:

> The record . . . reflects that the claimant underwent comprehensive orthopedic evaluation in July 2004. Upon examination, range of motion of the spine was somewhat limited, but sensation was intact. Reflexes were diminished over the lower extremities. Range of motion of the right shoulder was also mildly limited, which was related to an old fracture. The examining physician noted that the claimant was precluded from heavy lifting, repeated bending and stooping, and prolonged standing and walking over uneven ground.

The ALJ added:

> In addition, no examining physician has referred the claimant for additional testing or hospitalization for further investigation of his complaints. The Administrative Law Judge concludes that limiting the claimant to light work would accommodate any limitations that the claimant experiences, and is compatible with the opinion of [Dr. Garland] who conducted the most comprehensive examination of record.

Thus, the ALJ accepted Dr. Garland's assessment. The ALJ's comments on Dr. Richardson are very limited:

> The claimant began a . . . conservative course of treatment, and in July 2003, he reported some improvement in his back pain. That same month nerve conduction studies of the lower extremities did not reveal any evidence of significant radiculopathy.

Because plaintiff argues that the ALJ failed to give specific and legitimate reasons for not accepting Dr. Yabes' opinion, plaintiff acknowledges that the opinion is contradicted. As stated above, the ALJ may resolve a conflict in contradicting medical opinions. The court finds that, in resolving the conflict by not according Dr. Yabes' opinion much weight, the ALJ

11

complied with the requirement of setting forth specific and legitimate reasons. Specifically, the ALJ noted that Dr. Yabes' functional assessment was not supported by objective findings and did not describe plaintiff's limitations with any specificity. These reasons are supported by the record. While Dr. Yabes' September 2004 assessment indicates that his conclusions are based on an examination, he did not mention any specific observations to support his assessed limitations. Further, as the ALJ observed, Dr. Yabes' did not quantify the assessed limitations. For example, as to how often plaintiff could reach and pull, Dr. Yabes simply stated "yes."

  **B.** **Consultative Examining Physician's Report**

    Dr. Steven McIntire, M.D., performed a consultative examination of plaintiff and prepared a report in March 2005. As to Dr. McIntire, the ALJ stated:

> In March 2005, the claimant underwent repeat orthopedic evaluation. The claimant continued to allege persistent back pain, aggravated by prolonged sitting and standing. Upon examination, range of motion of the lumbar spine was somewhat limited, and reflexes were diminished over the right knee. The examiner suggested that the claimant is able to perform light work activity. The Administrative Law Judge notes that the claimant's representative submitted a statement . . . objecting to [Dr. McIntire's] findings. However, the findings in this examination, limited range of motion of the spine, and diminished reflexes, are consistent with the findings of all of the other examinations of record. Therefore, the Administrative Law Judge finds that there is no reason not to give consideration to [Dr. McIntire's opinion].

Plaintiff argues that Dr. McIntire's evaluation does not meet the regulatory requirements because "Dr. McIntire did not examine Mr. Van Liew closely, did not carefully review the relevant records, and erroneously concluded that Mr. Van Liew's back pain was his sole disabling impairment." Plaintiff concludes that, for these reasons, the ALJ erred in relying on Dr. McIntire's conclusions.

    The court rejects plaintiff's argument that the ALJ's consideration of Dr. McIntire's assessment was misplaced. The basis of plaintiff's argument is that Dr. McIntire's report is not reliable because he did not carefully review the medical records and did not examine plaintiff closely. First, plaintiff has not identified any evidence supporting these

contentions. The mere fact that Dr. McIntire's opinion is not what plaintiff would like it to be is not evidence that the doctor did not conduct a careful and thorough review and examination. Second, Dr. McIntire's report states that he reviewed medical records consisting of "prior evaluations, clinic reports, imaging results, and an EMG nerve conduction study." There is no reason to believe otherwise. Further, the doctor's report clearly shows that he conducted a very thorough physical examination in which he: (1) checked vital signs; (2) observed coordination, station, and gait; (3) tested range of motion in the cervical, lumbar, and hip joint regions; (4) tested knee joint extension; (5) tested shoulder motion; (6) conducted a straight-leg raising test; (7) examined the lumbar spine; (8) checked motor strength and muscle bulk; and (9) conducted a sensory exam.

The court finds that Dr. McIntire's report complied with the requirements of the regulations and, therefore, that the ALJ did not err in considering it.

### C. Shoulder and Knee Problems

Plaintiff argues that the ALJ erred in not concluding that his shoulder and knee problems constitute severe impairments which affect his residual functional capacity. In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of

---

[2] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

The basis of plaintiff's argument is Dr. Garland's report which, according to plaintiff, "noted Mr. Van Liew's numerous medical impairments, including impairments in both his shoulders and both his knees." Dr. Garland, who conducted an extensive file review and his own examination, made the following observations concerning plaintiff's shoulders:

> . . . Shoulder flexion was 150/170 degrees; extension was 30/30 degrees; internal rotation was 60/60 degrees; external rotation was 80/80 degrees; and abduction was 150/170 degrees.

Contrary to plaintiff's characterization of Dr. Garland's report, these findings do not support a conclusion that plaintiff's shoulder problems constitute a severe impairment. With respect to plaintiff's abilities, Dr. Garland opined:

> Mr. Van Liew has a disability in the open labor market because of his shoulders which preclude him from using the upper extremities for heavy lifting, pushing, pulling, and using the hands over shoulder height.

As Dr. Garland made clear, the shoulder problem precludes heavy work activities. No doctor has opined that plaintiff cannot do light work due to his shoulder problem.

As to plaintiff's knees, Dr. Garland made the following observations:

> The knees were examined next with the applicant in the supine position on the examining table. Normal alignment was observed in the lower limbs. Knee motion was tested and found to be normal on both sides in both flexion and extension. The medial collateral, lateral collateral, and cruciate ligaments were intact. There was no evidence of an effusion within either joint. The applicant was able to squat in a satisfactory manner.

///

Again, these findings are inconsistent with a severe impairment. Dr. Garland described plaintiff's abilities as follows:

> Work restrictions for the applicant's knees are taken from the guidelines and are, in part, subsumed by the restrictions for his lumbar spine. In addition to those restrictions, he is precluded from prolonged standing, walking over uneven ground, squatting, kneeling, crouching, crawling, and performing other activities requiring comparable physical effort.

As defendant observes, these restrictions are accommodated by a limitation to light work. Again, no doctor has opined that plaintiff's knee problems severely limit plaintiff's ability to work.

Moreover, the other doctors' observations support the conclusion that plaintiff was not severely impaired with respect to his shoulders or knees. Plaintiff reported to Dr. Gross in 2002 for shoulder pain. Dr. Gross observed diminished range of motion in all planes, but no obvious erythema or effusion. The record does not reflect any further treatment by Dr. Gross for shoulder pain. In July 2003, Dr. Snook observed excellent range of motion in the knees. In January 2004, Dr. Yabes noted "5/5" with respect to bilateral knee extension and flexion. In February 2004, Dr. Davis noted that there was no support in the record for any shoulder impairment.

For these reasons, the court rejects plaintiff's contention that the ALJ failed to properly assess the severity of his limitations.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

    1.    Plaintiff's motion for summary judgment be denied;

    2.    Defendant's cross-motion for summary judgment be granted; and

    3.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   June 8, 2007.

　　　　　　　　　　　　　　　　　　　　／s／ Craig M. Kellison
　　　　　　　　　　　　　　　　　　　　**CRAIG M. KELLISON**
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE